UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

FIELDING VAUGHN KIMERY                                                          PLAINTIFF
ADC #133741

V.                       No. 4:20-CV-00692-SWW-JTR

SCOTT TAYLOR, Captain,
Varner SuperMax, *et al.*                                                       DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Susan Webber Wright. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Wright may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

Plaintiff Fielding Vaughn Kimery ("Kimery"), a prisoner in the Varner Supermax Unit ("VSM") of the Arkansas Division of Correction ("ADC"), filed a *pro se* § 1983 Complaint, Amended Complaint, Supplement, Second Amended Complaint, and Exhibits, alleging that Defendants violated his constitutional rights.

*Docs. 2, 15, 16, 42, 44 & 53*. After screening,[1] Kimery was allowed to proceed with his excessive force claims against Defendants Cornelius Christopher ("Christopher") and Brian Perkins ("Perkins") (hereinafter collectively referred to as "Defendants").[2] *Docs. 57 & 62*.

Defendants have filed a Motion for Summary Judgment, Brief in Support, and Statement of Undisputed Material Facts asserting that Kimery did not exhaust his available administrative remedies prior to filing this § 1983 action. Specifically, Defendants allege that Kimery did not file *any grievance* alleging excessive force against either Christopher or Perkins in connection with the January 2018 incidents. *Docs. 82-84*.

Kimery has filed a combined Response, Statement of Disputed Facts, and Brief in Opposition of the Motion, which he supplemented with additional filings, contending that he attempted to file grievances and exhaust his administrative

---

[1] *See* 28 U.S.C. § 1915A.
[2] Kimery's pleadings allege that: (1) on January 1, 2018, Defendant Christopher intentionally twisted the handcuffs on Kimery's stitched-up wrists, causing severe pain and bleeding; and (2) on January 17, 2018, Defendant Christopher repeatedly pepper sprayed Kimery, beat him while he was handcuffed, stomped on his shoulder, then left him cuffed and unconscious in the shower, after which Defendant Perkins kept Kimery in the shower "for hours," but refused to turn the shower on to allow Kimery to wash off the pepper spray. *Doc. 15 at 8–9*; *Doc. 44 at 7–8*. These two alleged excessive force incidents will hereinafter be referred to as "the January 2018 incidents."

remedies, but various unnamed ADC officials "blocked" the exhaustion process, making the administrative remedies unavailable to him.³ *Docs. 96, 100, 102 & 115*.

Thus, Defendants' The Motion for Summary Judgment is now fully joined and ready for disposition.

## II. Discussion

### A. ADC Procedures Governing the Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their administrative remedies before filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007). In *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), the Court held that the PLRA's exhaustion requirement is "mandatory."

---

³ Kimery labeled his initial Response (*Doc. 96*) as an "Appeal," which the Eighth Circuit dismissed for lack of jurisdiction. *Doc. 118*. The Court liberally construes this filing, along with his supplements, to be Kimery's Response to Defendants' Motion for Summary Judgment. Later filings by Kimery support this reading. *See Doc. 100 at 1*; *Doc. 102 at 1*.

3

The PLRA requires inmates to: (1) fully and properly exhaust their administrative remedies as to each claim in the complaint; and (2) complete the exhaustion process before filing an action in federal court. *Jones,* 549 U.S. at 211, 219-20, 223-24; *Woodford*, 548 U.S. at 93-95; *Burns v. Eaton,* 752 F.3d 1136, 1141-42 (8th Cir. 2014). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, a prisoner must comply with the exhaustion requirements of the incarcerating facility before he can properly file a § 1983 action.

The ADC provides a three-step administrative grievance process. ADC Adm. Dir. 14-16 §§ IV(E)-(G) ("AD 14-16").[4] To fully and properly exhaust administrative remedies, an ADC prisoner must file: (1) a "Step One" informal resolution raising the claim with the designated unit-level problem-solver within fifteen working days of the incident; (2) a "Step Two" formal unit-level grievance raising that claim with the Warden (for non-medical claims) within three working days of the denial of the informal resolution; and (3) an appeal to the appropriate

---

[4]The Defendants submitted a copy of AD 14-16 with their summary judgment papers. *Doc. 82, Ex. A-1*.

ADC Chief Deputy/Deputy/Assistant Director within 5 working days of the Warden's Decision. *Id*. Finally, the ADC's policy cautions prisoners that, if they fail to "exhaust their administrative remedies as to all defendants *at all levels* of the grievance procedure … their lawsuits or claims may be dismissed immediately" under the PLRA. *Id.* at § IV(N) (emphasis added); *see also Id.* at § IV(C)(4) & (D)(2) (both advising inmates to fully exhaust a grievance prior to filing a lawsuit).

The ADC administrative grievance policy requires that, in connection with each claim, a prisoner must "specifically name each individual involved," and include a "brief statement that is specific as to the substance of the issue or complaint to include the date, place [and] personnel involved or witnesses." AD 14-16 § IV(C)(4) & (E)(2). Further, "only one problem/issue should be stated in [each] grievance, not multiple problems/issues. *Id.* at § IV(D)(2). For multiple issues, "[a]n inmate must use a separate form for each issue." *Id.* If more than one problem/issue is included in a grievance, "[o]nly one issue will be addressed," and "[t]he additional problems/issues contained in the grievance will not be considered as exhausted." *Id.*

Thus, for Kimery to fully and properly exhaust the administrative grievance process for his excessive force claim, the ADC required him to file: (1) a "Step One" informal resolution with the designated unit-level problem-solver raising the issue; (2) a "Step Two" formal unit-level grievance of the claim to the Warden; and (3) a

Step Three appeal to the appropriate Chief Deputy/Deputy/Assistant Director. *See* AD 14-16 § IV(D)-(G).

### B. Defendants' Motion for Summary Judgment on the Exhaustion Issue

In their Motion for Summary Judgment, Defendants argue that, after the January 2018 incidents, Kimery *never* filed a grievance complaining about their alleged use of excessive force. *Doc. 83 at 1*. In support of their Motion, Defendants have attached a signed Declaration, dated July 16, 2021, from Terri Grigsby-Brown, the ADC's Inmate Grievance Coordinator.[5] *Doc. 82-1*. In her Declaration, Grigsby-Brown states that: (1) she "reviewed Inmate Kimery's grievance file for the period May 28, 2017 to May 28, 2020, the date he filed this Complaint;" (2) during this time period, Kimery's only grievance naming Defendant Christopher was VSM18-03252, and, in that grievance, Kimery only complained about Christopher interfering with Kimery's mail; and (3) she found no grievances filed by Kimery that "involve[ed] Officer Brian Perkins during [the relevant time] period." *Id.* at ¶¶ 8-9.

### C. Kimery's Response in Opposition to Defendants' Motion for Summary Judgment

In Response, Kimery asserts that he attempted to file grievances and exhaust his administrative remedies, but all of these grievances were "blocked" by unnamed

---

[5] Pursuant to 28 U.S.C. § 1746, an unsworn declaration is given the same "force and effect" as a sworn declaration, oath or affidavit, if the unsworn declaration is signed, dated, and subscribed by the declarant to be true and correct, under penalty of perjury.

6

VSM officials; thereby making the administrative remedies process "unavailable" to him. *Doc. 96*. In support of this claim, Kimery submits two of his own Declarations, along with several unrelated grievances and disciplinary documents. *Id.*; *Docs 102, 115, 119*.

Failure to exhaust administrative remedies is an affirmative defense that Defendants must prove. *Jones*, 549 U.S. at 216. Under the PLRA, "[a]n inmate … must exhaust *available* remedies, but need not exhaust *unavailable* ones." *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (emphasis added). An administrative remedy is "unavailable": (1) when "it operates as a simple dead end," with officers unable or consistently unwilling to provide any relief; (2) when the administrative scheme is "so opaque" as to be practically "incapable of use" and "no ordinary prisoner can discern or navigate it"; or (3) when prison officials thwart inmates from taking advantage of a grievance process through "machination, misrepresentation, or intimidation." *Id.* at 1859-60.

The Eighth Circuit has found administrative remedies to be "unavailable" where prison officials prevented inmates from utilizing the grievance procedure or complying with the necessary procedural requirements. *See Townsend v. Murphy,* 898 F.3d 780, 783 (8th Cir. 2018) (holding remedy unavailable where prison officials misled inmate by advising him not to file a formal grievance until he received a response to his informal complaint); *Foulk v. Charrier,* 262 F.3d 687,

697-98 (8th Cir. 2001) (holding that "once [prison officials] failed to respond to [prisoner's informal resolution request], no further administrative proceedings were 'available' to him"); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (holding remedy unavailable when prison officials denied prisoner's requests for grievance forms); *See* also, *Boyd v. Doe,* 746 F. App'x 599, 600 (8th Cir 2018) ("A record keeper's declaration that a prisoner did not exhaust a grievance is insufficient to establish non-exhaustion as a matter of law when the prisoner makes sworn assertions that he took the necessary steps to exhaust."); *McPeek v. Blanchard*, 670 F. App'x 424, 424-25 (8th Cir. 2016) (an inmate's affidavit, that he filed a grievance that the defendants lost or never responded to, created a sufficient factual dispute to prevent dismissal for non-exhaustion); *Conner v. Doe,* 258 F. App'x 304, 304 (8th Cir. 2008) (grievance officer's declaration that there was no record of Conner's having filed any grievances "was insufficient to establish failure to exhaust in the face of Conner's assertion … that he had filed at least two grievances but did not receive copies of them or responses to them").

### 1. Kimery's Declarations Allegedly Supporting His Claim that the Greivance Process was "Unavailable" to Him

To support his position that the grievance process was "unavailable" to him, Kimery has submitted two *unsworn* "Declarations." *See* 28 U.S.C. § 1746; *Doc. 96 at 2*; *Doc. 102 at 2*. In pertinent part, 28 U.S.C. § 1746 specifies the requirements

that, *if complied with*, allow an "unsworn declaration" to have the same "force and effect" as a sworn declaration:

> "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
> (Signature)."

28 U.S.C. § 1746(2).

### a. Kimery's First Undated Declaration

Kimery's first Declaration is undated but signed by him under penalty of perjury. *Doc. 96 at 2*. Generally, such an undated Declaration fails to meet the requirements of 28 U.S.C. § 1746 and cannot be considered by a court. *See Zubrod v. Hoch*, 907 F.3d 568, 574-75 (8th Cir. 2018) ("[*In Banks v. Deere*, 829 F.3d 661, 667 (8th Cir. 2016)] [w]e interpreted Federal Rule of Civil Procedure 56(c) and 28 U.S.C. § 1746 as prohibiting a court's consideration of an unsworn statement or declaration when deciding a motion for summary judgment unless it is signed, dated, and certified as true and correct under penalty of perjury."); *Banks v. Deere*, 829 F.3d 661, 668 (8th Cir. 2016) ("Under 28 U.S.C. § 1746, an unsworn declaration or statement must be written, signed, dated, and certified as true and correct 'under penalty of perjury.'").

However, *even if* I were to view Kimery's *pro se* status as an exception which authorized me to consider this undated Declaration as being in "substantial compliance" with § 1746, the substantive content of the Declaration is utterly

unhelpful to Kimery. In this Declaration, Kimery alleges unnamed VSM officials "employed inmates" to impersonate him in falsified audio and video records to invalidate his claims. *Doc. 96 at 2*. This far-fetched claim has *nothing* to do with Kimery's claim that unnamed VSM officials allegedly thwarted him from exhausting his administrative remedies on the excessive force claims he is asserting against Christopher and Perkins in this § 1983 action. Accordingly, Kimery's undated Declaration (*Doc. 96 at 2*) contains *nothing* to support his vague and conclusory claim that unnamed "VSM officials" blocked his grievances complaining about Defendants use of excessive force during the January 2018 incidents.

### b. Kimery's September 13, 2021 Declaration

Kimery's other Declaration, dated September 13, 2021, references a 2018 "incident report" *from three years* earlier in which Kimery made statements about an alleged assault by Christopher, which took place on some *unspecified date*. He goes on to state his grievance about the assault was thrown away, and that VSM officials failed to file, process, and respond to his grievances. *Doc. 102 at 2*. While the 2018 incident report Kimery refers to is in the record (*Doc. 96 at 8*), notably absent are attached copies of any of Kimery's Step One informal resolutions that *he*

*should still have* documenting the fact that he at least took the first step in the administrative grievance process.[6]

While the September 13, 2021 Declaration states that it was made "[p]ursuant to 28 U.S.C. 1746 [and] 18 U.S.C. 1621,"[7] it does *not* declare under penalty of perjury that the content of the Declaration is true and correct. *Doc. 102 at 2*.[8] Because this Declaration lacks the required statutory language to allow the Court to accept it "as being true," it cannot be relied on to establish that Kimery was thwarted or blocked from exhausting his administrative remedies on his excessive force claims against Christopher and Perkins. *See Zubrod,* 907 F.3d at 574-75; ("[*In Banks v. Deere*, 829 F.3d 661, 667 (8th Cir. 2016)] [w]e interpreted Federal Rule of Civil Procedure 56(c) and 28 U.S.C. § 1746 as prohibiting a court's consideration of an unsworn statement or declaration when deciding a motion for summary judgment unless it is signed, dated, and certified as true and correct under penalty of perjury."); *Banks*, 829 F.3d at 668 ("Under 28 U.S.C. § 1746, an unsworn declaration or

---

[6] "Inmates are required to attempt informal resolution of a problem/complaint prior to filing a grievance." AD 14-16 § IV(E). To do so, an inmate must complete the Unit Level Grievance Form and submit it, within 15 days after the occurrence of the incident, to the designated problem-solver or any staff member holding the rank of sergeant or above. *Id*. Once submitted, "the problem-solver or staff member must sign and date the form, *giving the inmate back the yellow and pink copies as receipts*." *Id*. at § IV(E)(3) (emphasis added).

[7] 18 U.S.C. § 1621 is the federal criminal statute for perjury.

[8] It hardly seems a coincidence that one of Kimery's Declarations is *undated* but "signed under penalty of perjury,' while his other Declaration is dated but *not* "signed under penalty of perjury." This creates at least the suggestion that Kimery is "being too clever by half" in trying to avoid any potential future charge of perjury if "the facts" contained in those documents are later proven to be "made of the whole cloth."

statement must be written, signed, dated, and certified as true and correct 'under penalty of perjury.'").

At the summary judgment stage, proof must be met with proof. *See Barker v. Coleman*, Case No. 3:18-cv-137-DPM-JTR, 2020 WL 1046690 (March 3, 2020) (declining to adopt recommendation to deny Defendant's Motion for Partial Summary Judgment and instead granting the Motion, stating that "proof must be met with proof at the summary judgment stage," and because Plaintiff's statement that he attempted to exhaust his remedies about an alleged assault was not "signed, dated, and certified as true and correct under penalty of perjury," it could not be considered in deciding the Motion for Summary Judgment) (citing *Zubrod*, 907 F.3d at 574-75). Thus, Kimery's Declarations do not contain any facts this Court can consider to support Kimery's entirely conclusory assertions that unnamed "VSM officials" thwarted or blocked his grievances seeking to exhaust the excessive force claims he is raising for the first time in this action.

### 2. Unrelated Incident Reports and Other Grievances Allegedly Supporting Kimery's Claim that the Grievance Process Was Made Unavailable to Him

The only other material in the record that might support Kimery's claim that he was thwarted or prevented from exhausting his administrative remedies are the various other disciplinary reports and stray grievance documents. *Doc. 96 at 8-11*; *Docs. 102, 115 & 119*. Kimery points primarily to Incident Report Number 2018-

12-129 and Grievances VSM18-0312 and VSM18-0352 as supporting his claim that he was thwarted from exhausting his administrative remedies on his excessive force claims against Christopher and Perkins. *Doc. 96 at 3*.

### a. Incident Report 2018-12-129

Incident Report 2018-12-129 resulted in Kimery later receiving a Major Disciplinary. Importantly, this Incident Report was written by Sergeant Tashayla Jackson, almost a year *after* the alleged January 2018 excessive force incidents involving Christopher and Perkins. *Doc. 96 at 8*. The Incident Report states the following:

> On 12/14/18 at 12:54 pm Inmate Fielding Kimery ADC # 133741 called the PREA Hotline at the Varner Unit (Block 2, Tier 2) and stated, I'm dealing with retaliation issues and harassment at VSM. My number is 133711. I'm having my grievances not returned. I have requested a 1983-42 form for weekscases [sic]. AD's and AR's denied. Um, grievances have been thrown away and not returned. Like I said, I grieved over Cpt. Christopher Cornelius [sic] and grieved over retaliation from staff. I was assaulted by Christopher Cornelius [sic]. I filed a grievance that was thrown away. Now I'm trying to file a lawsuit and they're preventing me from doing that. I don't know what to do from here. I'm trying to get my shoulder fixed. I'm in pain. My left shoulder is hurt. They're telling me I got arthritis in my left shoulder since I was assaulted. Ms. Bland, with medical, the problem solvers that came to my door; I discussed these issues with the warden, Dexter Payne last month. Nothing's been down." Inmate Kimery also alleges that his mail is not getting out and somebody has his property. "I wrote Wendy Kelly and reported all these things and nothing's happened. I never wanted to take it this far." The information that Inmate Kimery provided is not PREA related. Inmate Kimery is aware that the PREA hotline is to be used for only PREA related issues. Inmate Kimery is aware that he is abusing the PREA Hotline by using it to vent about issues that are not PREA related. For this reason I Sgt T. Jackson am

charging Inmate Kimery ADC #133741 with the following rule violations, 2-5 and 13-2.

*Doc. 96 at 8*.

Ironically, this incident report documents Kimery making a false "PREA" report as a pretext to complain about some prior excessive force incident in which he allegedly filed grievances which were "thrown away and not returned." Kimery's blatantly dishonest conduct, in fabricating a PREA incident so he could complain to someone on the PREA Hotline that unnamed individuals had "thrown away" his grievances raising a long ago excessive force incident, are *not* reliable facts this Court can consider in deciding if Kimery should be excused from his obligation to exhaust his administrative remedies.

Accordingly, the PREA Incident Report contains *no reliable facts* to support Kimery's claim that unnamed VSM officials thwarted him from exhausting his administrative remedies on Christopher's and Perkins's alleged use of excessive force during the January 2018 incidents.

### b. Grievance VSM18-03212

In Grievance VSM18-03212,[9] Kimery did *not* name either Defendant, make any reference to their use of excessive force against him, or complain specifically

---

[9] In this grievance, dated November 7, 2018, Kimery stated:
My outgoing correspondence personal and legal documentary evidence notarized statements exhausted grievances addressed first class mail postage paid never delivered by US Postal Service yet were delivered and entrusted to multiple

about the alleged blocking of his grievances or the unavailability of the grievance process in connection with his excessive force claims against Christopher and Perkins. *See Doc. 96 at 9*. Instead, this grievance complains generally about Kimery's outgoing mail not being delivered properly by the U.S. Postal Service. *Id*. While Kimery appears to have fully and properly exhausted VSM17-0312, it was *wholly irrelevant* to Defendants' alleged use of excessive force during the January 2018 incidents. Accordingly, Kimery cannot rely on this grievance to establish that he exhausted his administrative remedies on the excessive force claims he has asserted in this action.

### c. Grievance VSM18-03252

Like VSM18-03212, Kimery filed Grievance VSM18-03252 on November 7, 2018, and complained primarily about his mail not being delivered by the U.S. Postal Service after he turned it over to VSM officers who were responsible for placing it

---

officers ADC one Patricia Page and was told by her and others that officers that take mail are not responsible to contact mail room. Did Ms. Allen Mail Room Supervisor contacted and let me know she was not responsible that she sent out my constitutional protected rights cannot file or contact counsel or court nor family. Need locked box where mail can be put like the food cart that can be wheeled door to door and close the gap from door to mailroom.

*Doc. 96 at 9*.

The Warden provided the following Response to this grievance on December 17, 2018: "Mrs. Allen advised once your mail is received it is processed and given to the Mail Carrier. Therefore I find no merit in your grievance." *Id*.

Kimery filed a Step Three appeal of the Warden's Decision, which the Director denied, on January 16, 2019, stating: "Your appeal was received on December 18, 2018. After review of you appeal and supporting documentation, I find that I concur with the Warden's decision. Your appeal is without merit." *Id*.

in the VSM mailbox. *Doc. 96 at 10.*[10] Although this grievance referred to a "1983 case against Captain Chris Cornelius [sic]" and other VSM employees, it did not: (1) contain any allegations of excessive force; (2) make any specific allegations against "Cornelius" [sic]; (3) mention Defendant Perkins; or (4) mention any specific details or dates explaining his mail issues and how those problems prejudiced any of his claims or cases. *Id.*

Thus, while Kimery exhausted this grievance, it was *wholly irrelevant* to the excessive force claims he is alleging against Christopher and Perkins in this action. Accordingly, Kimery cannot rely on this grievance to establish that he fully and properly exhausted his administrative remedies on the § 1983 claims he is asserting in this action or to establish that he was thwarted from doing so.

---

[10] In VSM18-03252 Kimery stated:
> Personal and privileged correspondence legal documentary evidence notarized statements exhausted grievances power of attorneys case and letters gave to Patricia Page, SGT Notary and Brandon Carroll, Major, VSM. Never delivered by US Postal Service yet were delivered and entrusted to above and multiple other Officers, VSM, ADC. All above 1983 case against Captain Chris Cornelius, medical Mr. Wood, Ms. Bland, Mental Health Giggleman, Kilpatrick, Compton, and many personal letters to family, friends, drawings, all out going correspondence shut in and shut out of VSM.

*Doc. 96 at 10.*
The Warden's Response stated: "You have failed to provide specific details such as the dates you alleged your mail was given to staff. Be advised all mail goes out once it is received in the mail room. The Mail Room does not have any control over when the US Postal Service delivers their incoming and outgoing mail. I find this issue without merit." *Id.*

### d. Other Disciplinary and Grievance Documents

Kimery also attached other disciplinary and grievances documents to his supplemental Response apparently on the mistaken belief those documents demonstrate that he was thwarted from exhausting his administrative remedies on his excessive force claims against Christopher and Perkins. *Doc. 96 at 11*; *Doc. 115 at 13-38*; *Doc. 119*. However, a review of those documents establish they were all generated in connection with incidents that took place in 2019, 2020, and 2021, long *after* the January 2018 incidents involving Christopher and Perkins. *Id.*

In his pleadings, Kimery alleges that Christopher used excessive force against him on January 1, 2018, and Christopher and Perkins used excessive force against him on January 17, 2018. The ADC grievance procedure required Kimery to initiate his Informal Resolution within 15 days of these respective incidents. *See* AD 14-16 § IV(E). Further, absent and extension of time or unforeseen circumstances, the grievance process, from Step One through Step Three, is to be completed within 76 working days. *Id.* at § IV(G)(9). Thus, these other disciplinaries and grievances, from 2019, 2020, and 2021, are *wholly irrelevant* to Kimery's vague and entirely unsupported claim that he was thwarted from exhausting his administrative remedies in connection with Christopher's and Perkins's use of excessive force against him during the January 2018 incidents.

### III. Conclusion

The PLRA requires inmates to: (1) fully and properly exhaust their administrative remedies on each complaint or issue that they may later seek to pursue in a § 1983 action; and (2) complete the exhaustion process *before* initiating such an action in federal court.[11] Kimery admits that he did not fully exhaust his administrative remedies on the excessive force claims he is asserting against Christopher and Perkins, but tries to save those claims by making far-fetched and factually unsupported arguments about unnamed VSM officials thwarting his attempts to exhaust his administrative remedies on those claims. Because Kimery has failed to provide any credible evidence to support his argument that administrative remedies were made unavailable to him, Defendants are entitled to summary judgment on Kimery's excessive force claims that allegedly took place during the January 2018 incidents.

IT IS THEREFORE RECOMMENDED THAT Defendants' Motion for Summary Judgment (*Doc. 82*) be GRANTED, and this action be DISMISSED, WITHOUT PREJUDICE.

DATED this 18th day of February, 2022.

_____
UNITED STATES MAGISTRATE JUDGE

---

[11] *Jones,* 549 U.S. at 211, 219-20, 223-24; *Woodford,* 548 U.S. at 93-95; *Burns,* 752 F.3d at 1141-42.